**In re Marilyn FAREED, Debtor.**

**No. 00 B 31765.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

May 31, 2001.

Robert J. Adams, Robert J. Adams & Associates, Chicago, IL, for debtor.

Synde B. Keywell, Kristine E. Watson, Coston & Lichtman, Chicago, IL, for Creditor Household Automotive Finance Corporation.

## MEMORANDUM OF OPINION

EUGENE R. WEDOFF, Bankruptcy Judge.

The dispute now before the court raises the recurring question of the proper procedure for valuing collateral in Chapter 13. In this case, a creditor filed a proof of claim asserting a particular collateral value, and, following plan confirmation, the debtor filed an objection to the proof of claim, asserting a lower value. The creditor has responded with a motion to dismiss the objection, contending that any challenge to the collateral value asserted in its proof of claim had to be raised before confirmation. As explained below, (1) the provisions of a confirmed Chapter 13 plan govern the treatment of secured claims and bind both the creditor holding the claim and the debtor, and (2) the plan in this case adopted the collateral value stated in the creditor's proof of claim. Accordingly, the debtor may not challenge this collateral value after confirmation, and the debtor's request to determine the value of the collateral at this time is denied.

## Jurisdiction

Federal district courts have exclusive jurisdiction over bankruptcy cases. 28 U.S.C. § 1334(a). However, pursuant to 28 U.S.C. § 157(a), district courts may refer bankruptcy cases to the bankruptcy judges for their district, and, by Internal Operating Procedure 15(a), the District Court for the Northern District of Illinois has made such a reference of the pending case. When presiding over a referred case, a bankruptcy judge has jurisdiction, under 28 U.S.C. § 157(b)(1), to enter appropriate orders and judgments as to core proceedings within the case. The allowance of claims against the estate is a core proceeding under 28 U.S.C. § 157(b)(2)(B), and the adjustment of the debtor-creditor relationship is a core proceeding under 28 U.S.C. § 157(b)(2)(O). This court therefore has jurisdiction to enter a final ruling on the pending matter.

## Findings of Fact

Marilyn Fareed filed this case under Chapter 13 of the Bankruptcy Code (Title 11, U.S.C.), on October 30, 2000. At that time, Household Automotive Finance Corporation held a claim against Fareed in the amount of $11,715.63, secured by Fareed's automobile, a 1994 Buick. Together with her bankruptcy petition, Fareed filed a proposed Chapter 13 plan, which provided, in relevant part, (1) that Fareed would contribute $127 every two weeks to the Chapter 13 trustee for a minimum period of 36 months, and (2) that from these contributions secured creditors would be paid "100% of the value of their security" and unsecured creditors would be paid "10% of claims allowed." The plan also provided for payment of interest at 9–1/2% per annum on claims secured by automobiles, but the plan did not specify the value of Household's security interest in Fareed's automobile.

On December 11, 2000, Household filed a proof of its claim with the court. In this proof, Household divided its total claim against Fareed into a secured claim of $8,600 and an unsecured claim of $3,115.63. The $8,600 secured claim was based on an N.A.D.A. Official Used Car Guide listing, attached to the proof of claim, estimating the retail value of an automobile of Fareed's make and model as of December 4, 2000.

On December 29, 2000—eighteen days after the proof of claim was filed—this court confirmed Fareed's Chapter 13 plan. On January 17, 2001, about three weeks after confirmation, Fareed filed an objection to Household's proof of claim, stating that the replacement cost of her automobile, as of the date of the filing of the petition, was $5,900 (based on an individualized appraisal), and requesting that the secured portion of Household's claim be reduced to that amount. Household responded, on January 29, with a motion to dismiss Fareed's objection, arguing that the objection, being filed after plan confirmation, could not be considered. After hearing arguments from the parties, the court took the matter under advisement.

## Conclusions of Law

The dispute now before the court involves only one aspect of the larger problem of the treatment of secured claims in Chapter 13. The problem arises from the application of §§ 506(a) and 1325(a)(5) of the Bankruptcy Code.

Section 506(a) provides for the bifurcation of secured claims. When a creditor's security interest in the debtor's property is worth less than the full amount of the creditor's claim (because the collateral is not worth enough to satisfy the claim fully), § 506(a) divides the claim into two parts: a "secured claim" to the extent of the collateral value, and an "unsecured claim" to the extent that the creditor's

claim exceeds the collateral value. *Associates Commercial Corp. v. Rash (In re Rash)*, 90 F.3d 1036, 1041 (5th Cir.1996) (en banc), *rev'd on other grounds*, 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997).

Section 1325(a)(5) allows a court to confirm a Chapter 13 plan only if it complies with one of three prescribed methods of satisfying each "allowed secured claim" resulting from the § 506(a) bifurcation. *See In re Townsend*, 256 B.R. 881, 884 (Bankr. N.D.Ill.2001) (holding that § 1325(a)(5) applies to secured claims after bifurcation under § 506(a)). Two of the prescribed methods are straightforward: § 1325(a)(5)(A) permits any treatment of a secured claim if the creditor "has accepted the plan," and § 1325(a)(5)(C) permits the debtor to satisfy a secured claim by surrendering the collateral. The remaining option, the "cramdown" provision of § 1325(a)(5)(B), presents the difficulty.

Section 1325(a)(5)(B) requires that the creditor (i) retain its lien and (ii) receive plan payments equalling the amount of the allowed secured claim as of the effective date of the plan. The impact of the second requirement is that if full payment is not made at the time of confirmation, interest must be provided as the secured claim is paid during the term of the plan. *Bellamy v. Federal Home Loan Mortgage Corp. (In re Bellamy)*, 962 F.2d 176, 185–86 (2d Cir. 1992). Among other disputes that this statutory scheme has engendered, courts have had to determine the required duration of the creditor's lien under § 1325(a) (*see Townsend*, 256 B.R. at 885); the proper cramdown interest rate under § 1325(a)(5) (*see In re Scott*, 248 B.R. 786 (Bankr.N.D.Ill.2000)); the time as of which collateral should be valued under § 506(a) (*see In re Addison Properties Ltd. Partnership*, 185 B.R. 766 (Bankr.N.D.Ill. 1995)); and the proper measure for valu-

ing the collateral under § 506(a) (*see Associates Commercial Corp. v. Rash*, 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997)).

Here, the issue is valuation of collateral, as in *Rash*, but instead of the substantive question of the measure of value, the question is procedural—when and through what process must a disagreement about collateral value be resolved? Household argues that if a secured creditor files a proof of claim prior to confirmation, asserting that its collateral has a particular value, then any dispute about collateral valuation must be raised in a claim objection, also filed before confirmation. Otherwise, Household asserts, the collateral value asserted in the proof of claim must be paid in full. Contrary to this position Marilyn Fareed seeks, through a post-confirmation claim objection, to litigate the question of how much must be paid under her plan on account of Household's secured claim, apparently taking the position that collateral value can be adjudicated at any time. Neither of these positions reflects a fully accurate understanding of the applicable law.

*Three procedures affecting secured claims in Chapter 13.* To resolve the pending dispute, it is important to understand the differences, both in timing and in effect, between three distinct processes affecting the treatment of secured claims in Chapter 13: claim allowance, collateral valuation, and plan confirmation.

■ 1. *Claim allowance under § 502: the total amount of the claim.* Section 501 of the Bankruptcy Code provides for the filing of proofs of claims, and § 502 provides for the "allowance" of claims for which a proof is filed. Under § 502(a), the proper filing of a proof of claim renders the claim allowed unless an objection is filed under § 502(b), and if an objection is filed, the court must "determine the

amount of such claim." This determination presumes the correctness of the amount stated in the proof of claim: the court must allow the claim as stated except to the extent that the claim falls within one of the nine categories for disallowance specified in § 502(b). Nothing in § 502 distinguishes between secured and unsecured claims—the only question to be determined by the court, in the event of a dispute, is the total amount of the claim that the creditor holds.

The Federal Rules of Bankruptcy Procedure implement the claim allowance process (1) by establishing deadlines for filing proofs of claim (e.g., Fed. R. Bankr.P. 3002, which requires most Chapter 13 creditors to file their proofs of claim within 90 days after the first date set for the creditors' meeting under § 341 of the Code), and (2) by establishing a procedure for claim objections, including an extended, 30–day notice of the hearing on any claim objection. Claim objections are treated as "contested matters" under Fed. R. Bankr.P. 9014, requiring motion practice rather than formal trial procedures. *United States v. Levoy (In re Levoy)*, 182 B.R. 827, 834 (9th Cir. BAP 1995).[1]

The effect of "allowing" a claim under § 502 differs depending on the chapter of the Code under which the case is pending. In Chapter 7 cases, allowance of a claim confers a right to payment from property of the estate, pursuant to § 726. In Chapter 13, rather than a right to payment, allowance grants the claim holder a right to object to any plan that does not provide the payments required by § 1325.[2]

■ 2. *Collateral valuation under § 506(a): the amount of the bifurcated "secured claim".* As noted above, § 506(a) of the Code provides for bifurcating allowed claims into secured and unsecured portions, based on the value of the collateral securing the claim. The claim allowance process of § 502 does not provide for such bifurcation. None of the nine categories for denial of claims set out in § 502(b) involves a lack of collateral value to support a secured claim, and, in *Dewsnup v. Timm*, 502 U.S. 410, 415, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), the Supreme Court definitively held that claim allowance under § 502 is distinct from collateral valuation under § 506(a).

At issue in *Dewsnup* was the proper interpretation of § 506(d), which provides generally for the avoidance of a creditor's lien to the extent that the lien does not secure an "allowed secured claim." The

1. If there is a dispute about the nature of a security interest claimed by a creditor, that dispute must be resolved more formally. Part VII of the Bankruptcy Rules establishes a procedure for "adversary proceedings," much like the procedure applicable to trials under the Federal Rules of Civil Procedure, and Fed. R. Bankr.P. 7001(2) generally provides that these more formal rules apply to "a proceeding to determine the validity, priority, or extent of a lien or other interest in property." Moreover, Fed. R. Bankr.P. 3007 indicates that if a question concerning a creditor's security interest is joined with a claim objection, the entire matter must be treated as an adversary proceeding ("If an objection to a claim is joined with a demand for relief of the kind specified in Rule 7001, it becomes an adversary proceeding."). *See In re Consolidated Industries Corp.*, 1999 WL 297492 (Bankr.N.D.Ind.1999) (collecting authorities on the interpretation of Rule 3007, and concluding that the rule requires employment of adversary procedures).

2. The minimum treatment for allowed secured claims is set forth in § 1325(a)(5), described above. For allowed unsecured claims, creditors can demand, under § 1325(a)(4), payment at least equal to what they would have received in a Chapter 7 case, and can require, under § 1325(b), that the debtor either pay the claims in full or contribute all of the debtor's disposable income to the plan for a minimum three-year period.

debtor in *Dewsnup* had argued that this phrase refers to the secured claim that results from collateral valuation under § 506(a), but the Supreme Court accepted the creditor's argument that, in § 506(d), "allowed secured claim" means simply a claim allowed under § 502 that is supported by a security interest in the debtor's property:

> Because there is no question that the claim at issue here has been "allowed" pursuant to § 502 of the Code and is secured by a lien with recourse to the underlying collateral, it does not come within the scope of § 506(d), which voids only liens corresponding to claims that have *not* been allowed and secured.

502 U.S. at 415, 112 S.Ct. at 777. Plainly, then, the valuation of collateral under § 506(a) involves no objection to, or disallowance of, a claim under § 502.

▮ Rather, § 506(a) provides its own procedure for determining the collateral value that bifurcates a claim into secured and unsecured portions: "Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." No presumption is accorded to the valuation stated by the creditor. And consistent with the understanding that bifurcation of claims under § 506(a) does not involve the claims objection process of § 502, there is again a separate rule—Fed. R. Bankr.P. 3012 ("Valuation of Security")—dealing with claim bifurcation. It provides simply (and with no requirement of extended notice or enhanced procedural safeguards):

> The court may determine the value of a claim secured by a lien on property in which the estate has an interest on motion of any party in interest and after a hearing on notice to the holder of the secured claim and any other entity as the court may direct.

Unfortunately, the distinction between motions seeking valuation of collateral under § 506(a), on one hand, and claim objections under § 502(b), on the other, is rarely observed in the Chapter 13 practice of this district. The confusion between the two procedures originates in the Official Bankruptcy Forms, whose use is required by Fed. R. Bankr.P. 9009. Even though, as discussed above, the claim allowance process initiated by a proof of claim deals only with the total amount of a creditor's claim, and does not involve collateral valuation, Official Form 10, for Proofs of Claim, requires both an indication that a claim is secured, and a valuation of the collateral securing the claim. Accordingly, the common method used by debtors or other parties in interest to raise the issue of collateral valuation under § 506(a) is by filing a "claim objection" asserting that collateral is overvalued in the creditor's proof of claim. This procedure is described in detail in *In re Simmons,* 224 B.R. 879, 882 (Bankr.N.D.Ill.1998). There is no necessary harm in the inaccurate terminology employed in this procedure. The Official Form provides a method for creditors to state their position as to collateral valuation, and either a "Motion to Value Security" or a "Claim Objection" serves both to give notice to the creditor that this valuation is contested, and to allow for a court determination of collateral value, as required under § 506(a), to arrive at the amount of a creditor's allowed secured claim. However, there remains a potential for confusion if the presumptions and procedures for genuine § 502(b) claim objections are read into the procedures for § 506(a) collateral valuation.

3. *Plan confirmation under § 1327: the binding treatment of claims.* The provisions of the Bankruptcy Code governing

the confirmation of Chapter 13 plans are straightforward and flexible. Section 1321 states that the debtor shall file the plan, and § 1324 states that the court shall hold a hearing on confirmation of the plan, on notice, and that a party in interest may object. The substance of the confirmation hearing is defined by §§ 1322 (required and permitted contents of the plan) and 1325 (requirements for confirmation-including the rights to minimum payment that may be asserted by holders of allowed claims). The Federal Rules of Bankruptcy Procedure require that the debtor file the plan within 15 days of filing the bankruptcy case (Fed. R. Bankr.P. 3015(b)), but they set no time limits for the confirmation hearing, and the only requirement for objections to confirmation is that they be filed and served before the confirmation hearing (Fed. R. Bankr.P. 3015(f)). Although various provisions of Chapter 13 refer to acceptance or rejection of a Chapter 13 plan by creditors, there is no provision in Chapter 13 for voting by creditors: if the requirements of §§ 1322 and 1325 are met, the plan must be confirmed by the court. *See In re Fillion,* 181 F.3d 859, 862 (7th Cir.1999) ("Creditors do not vote on a Chapter 13 plan.... Under Chapter 13, if a debtor proposes a plan which complies with 11 U.S.C. § 1325, a creditor has no grounds to object to the plan."). The most critical aspect of plan confirmation, for purposes of the present dispute, is § 1327(a): "The provisions of a confirmed plan bind the debtor and each creditor ...

whether or not such creditor has objected to, has accepted, or has rejected the plan."

The importance of plan confirmation has been emphasized repeatedly by the Seventh Circuit Court of Appeals. In *In re Pence,* 905 F.2d 1107 (1990), the court dealt with a Chapter 13 plan that proposed to satisfy a $47,000 claim, fully secured by a mortgage on the debtor's home, by giving the creditor, in exchange, a parcel of commercial property. The creditor did not object to the plan, and it was confirmed. Thereafter, it became apparent that the commercial property was worth much less than the creditor's mortgage, and the creditor sought to revoke confirmation. In rejecting the creditor's arguments, the court explained the legal situation as follows:

> In effect, [the creditor] is now trying to challenge the valuation given to its collateral in [the debtor's] chapter 13 plan.... [The debtor] had no obligation to make an issue out of the valuation of [the creditor's] collateral before proposing her plan.... [I]nstead of attacking the valuation head-on at the confirmation hearing, [the creditor] has chosen a collateral attack on the confirmation order where valuation may not be contested.... [3]

Similarly, in *In re Chappell,* 984 F.2d 775, 782 (7th Cir.1993), the court considered a confirmed Chapter 13 plan that provided for full payment of a mortgage loan but did not provide for payment of interest, and the court rejected the mort-

---

**3.** On the other hand, the court in *Pence* indicated that, in order to be given conclusive effect in treating a secured claim, the plan would have to provide for a reasonable payment of the claim. Thus, the court noted that its decision was consistent with cases in which the courts had refused to accord binding effect to plan provisions that proposed to pay nothing on account of particular secured claims:

> In the cases where the courts have allowed a lien to survive bankruptcy proceedings despite provisions in a reorganization plan to the contrary, the plan did not allow for any payment of the secured claim-typically where the secured creditor did not file a proof of claim and the plan provided only for the payment of "allowed secured claims."
>
> 905 F.2d at 1110 (citations omitted).

gage holder's efforts to collect interest subsequent to confirmation:

No objection was filed, and the plan was confirmed. "The provisions of a confirmed [Chapter 13] plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). As a general rule, the failure to raise an "objection at the confirmation hearing or to appeal from the order of confirmation should preclude ... attack on the plan or any provision therein as illegal in a subsequent proceeding." *Matter of Gregory*, 705 F.2d 1118, 1121 (9th Cir. 1983)....

Most recently, in *Adair v. Sherman*, 230 F.3d 890, 894 (7th Cir.2000), the court reaffirmed the holdings of *Pence* and *Chappell*, and cited numerous decisions indicating that "[o]ur sister circuits share our view that once a bankruptcy plan is confirmed, its terms are not subject to collateral attack."

■ The impact of the decisions in *Pence, Chappell*, and *Adair* is to accord substantial discretion to a Chapter 13 debtor in formulating a plan. The debtor may choose simply to treat claims as allowed; alternatively, the debtor may propose particular payment terms regardless of the allowance process. Either way, the payments proposed by the plan will be binding upon confirmation.

*Summary of the three procedures in Chapter 13.* The three procedures outlined above each have a different role to play in connection with the payment of secured claims in Chapter 13. *Claim allowance,* under § 502, establishes the total amount of the creditor's "allowed" claim. Debtors and other parties may object to proofs of claim, contending that the claim should be allowed in an amount less than stated in a proof of claim, but only on the grounds for objection stated in § 506(b). *Collateral valuation,* under § 506(a), establishes how a claim, supported by a security interest in the debtor's property, is bifurcated into secured and unsecured claims. The "secured claim", arising from collateral valuation, if allowed under § 502, authorizes a secured creditor to demand the minimum plan treatment specified in § 1325(a)(5). Finally, *plan confirmation* determines whether the plan proposed by the debtor meets the minimum requirements of the Code, but in the absence of objection from the holder of an allowed secured claim, a plan provision calling for payment of the claim different from the required minimum is nevertheless effective, and may not be collaterally attacked.

*The impact of the Adair decision.* Beyond confirming the finality of confirmed plan provisions, as noted above, the Seventh Circuit's decision in *Adair v. Sherman* discusses collateral valuation in Chapter 13. This aspect of the decision is the basis for Household's motion to dismiss Fareed's objection to its claim.

In *Adair,* a Chapter 13 debtor filed a plan providing that "all allowed secured claims would be paid in full." 230 F.3d at 893. This plan was confirmed. Following confirmation (and the ultimate dismissal of the Chapter 13 case), the debtor brought a new action in district court, under the Fair Debt Collection Practices Act, against the attorney who had represented one of the secured creditors in the bankruptcy case. This new action alleged that the attorney had fraudulently overvalued the creditor's secured claim in its proof of claim. The Court of Appeals affirmed the district court's dismissal of the new action on the grounds (1) that the proof of claim had been filed prior to confirmation, (2) that the debtor did not challenge the proof of claim at the time of confirmation, (3) that

confirmation of the plan adjudicated the value of the claim as stated in the proof of claim, and (4) that, accordingly, the debtor was collaterally estopped from litigating the claimed value in a later case. 230 F.3d at 894–95.

■ In so ruling, the Seventh Circuit referred to § 502, and discussed the need for debtors to file pre-confirmation "claim objections."[4] Nevertheless, for a number of reasons, it is apparent that the issue actually dealt with by the court was collateral valuation under § 506(a), and that the decision should properly be read as requiring only that valuation of collateral—establishing the amount of the creditor's "allowed secured claim" for purposes of § 1325(a)(5)—take place at the time of confirmation:

- Valuation of collateral was the issue actually before the court in *Adair. See* 230 F.3d 890, 893, where the court notes the genesis of the dispute: "The proof of claim listed the value of the Chevrolet as $19,841.43, an amount greater than the car's original purchase price. Mr. Adair did not object to the valuation of the car prior to confirmation." It was the debtor's later complaint about collateral valuation that the court held was foreclosed. The debtor raised none of the grounds for claim objections under § 502(b) and never contested the total amount of the creditor's claim; only collateral valuation under § 506(a) was at issue.

- There is ample ground for holding that confirmation should determine the val-

ue of a creditor's security interest under § 506(a). Section 506(a) expressly requires that collateral be valued "in conjunction with any hearing on ... a plan affecting [a secured] creditor's interest." In contrast, there is nothing in the Code that requires claim objections, under § 502(b), to be determined at the time of confirmation.

- It is practicable and reasonable to require that collateral value, under § 506(a), be established at the time of confirmation. Secured claims in Chapter 13 cases are relatively few in number and of substantial importance to the confirmation process, so a debtor can reasonably be required to adjudicate collateral value at confirmation, providing certainty as to the payments required to be made on secured claims and facilitating a determination by the court that the debtor will be able to make the required plan payments. This adjudication can take place in either of two ways. *First,* the collateral valuation asserted in a proof of claim can be contested. The debtor (and other parties in interest) have at least constructive notice of the collateral valuation asserted in a creditor's proof, and they can challenge the creditor's valuation before or during the confirmation hearing by a motion to value security (which may be inaccurately referred to as a claim objection). A failure to challenge a creditor's asserted valuation can be seen as acceptance by default, as *Adair* holds.[5]

---

4. "According to the bankruptcy code, any proof of claim filed by a creditor is deemed allowed, unless a party in interest objects. *See* 11 U.S.C. § 502(a).…" 230 F.3d at 894. "We respectfully choose not to follow those cases allowing post-confirmation objections to proofs of claims to be filed even though the proof of claim itself was filed sufficiently in

advance of the confirmation hearing." 230 F.3d at 895 n. 6.

5. It would be more in keeping with Fed. R. Bankr.P. 3012 if the creditor asserted its claimed collateral valuation in a motion to value security, with actual notice given to the debtor and any other party specified by the court. No notice is required of proofs of

*Second,* whether or not a proof of claim has been filed, the debtor's plan may assign a value to the secured claim, requiring the creditor to object to confirmation if it believes that the assigned value is too low. If there is a conflict between a proof of claim and the terms of a confirmed plan, the plan will control, as *Chappell* holds. Either of these methods satisfies the mandate of § 506(a) that collateral value be determined in conjunction with the confirmation hearing.

• On the other hand, a requirement that the allowance of claims under § 502 be fully adjudicated at the time of confirmation is not practicable, and would substantially delay confirmation and creditor payment. Unsecured claims against a debtor are often numerous and of small, but uncertain, amount; Chapter 13 plans therefore generally rely on the creditors' proofs of claim to indicate the amount of each claim owing, and then direct that unsecured claims be paid pro rata from funds available after higher priority claims are paid. It would be unrealistic to expect a debtor's plan to assert a separate value for each unsecured claim. Moreover, the general deadline for filing proofs of claim (90 days after the first date set for a § 341 meeting) can be substantially *after* the time of the confirmation hearing—in the present case, the claims deadline did not occur until nearly two months after confirmation, and the 30–day notice requirement for claim objections would ex-

tend the time needed for adjudicating claim objections even further.

■ *The procedural posture of the pending case.* In the legal framework outlined above, the procedural posture of the present case becomes clearer. *First,* because Household Automotive Finance Company had filed a proof of claim against Marilyn Fareed which was not objected to as of the confirmation hearing, the total claim amount asserted in the proof of claim was deemed allowed under § 502(b) at the time of plan confirmation, although it remained potentially subject to objection thereafter. *Second,* Household's proof of claim asserted that Fareed's automobile, for purposes of § 506(a), had a value of $8,600. Because this valuation was not challenged by Fareed or any other party at the time of confirmation, the value of Household's security interest under § 506(a) was fixed at $8,600 at the confirmation hearing, regardless of how much Fareed's automobile was actually worth at that time. Household was entitled to insist on full payment of this "allowed secured claim" under § 1325(a)(5)(B), and Fareed retained no right to challenge the value of Household's secured claim under § 506(a) after confirmation. *Third,* unlike the plan in *Adair,* Fareed's plan did not track the language of § 1325(a)(5) by providing for payment in the full amount of Household's allowed secured claim. Instead, it provided for payment of "the value of [Household's] security," the amount of which was not stated. When this plan was confirmed, it bound both Household and Fareed, regardless of whether it pro-

claim—parties in interest must check the court docket to learn of them. *See* Fed. R. Bankr.P. 3002 (imposing no notice requirement in connection with proofs of claim filed by creditors). However, all parties are on notice that collateral valuation must be determined at the confirmation hearing, and so may either check the docket to learn if the

creditor asserts a collateral valuation with which they disagree, or—regardless of the creditor's proof of claim—assert their own valuation in a Rule 3012 motion. Under *Adair,* a creditor's proof of claim controls collateral valuation only if no other party raises the issue as of the confirmation hearing.

vided for full payment of Household's allowed secured claim.

In this context, Fareed's pending "claim objection" can be seen as a motion to determine the value of Household's security interest under her plan, and Household's motion to dismiss is better understood as an argument that Fareed's motion should be denied because the confirmation hearing conclusively adjudicated the issue of collateral valuation.[6] The dispositive issue is the interpretation of the confirmed plan. If, by providing for payment of the "value of [Household's] security," the plan left open the question of collateral valuation for later determination by the court, then it would be appropriate for the pending objection to be heard on the merits. Conversely, if "the value of [Household's] security" means the amount of its secured claim under § 506(a), then, as Household asserts, that issue was conclusively determined at the time of the confirmation hearing, when no challenge was made to the valuation stated in Household's proof of claim.

Although the question is not wholly free from doubt, the better reading of the plan is that "value of security" means "amount of the secured claim under § 506(a)." First, under § 506(a), "value of security" determines the amount of the secured portion of a creditor's claim, so the phrase "value of its security" in Fareed's plan would reasonably be read to refer to the § 506(a) value of a creditor's secured claim. Second, unless the plan incorporated the value of the secured claim stated in Household's proof of claim, there would have been no way at the time of the confirmation hearing to determine what payments the trustee was required to make to Household under the plan and, according-

ly, whether the plan was feasible—whether the debtor's contributions to the plan would be sufficient to allow the trustee to make the proposed payments to Household and Fareed's other creditors. Finally, any ambiguity on the issue should be resolved against the debtor, since the debtor drafted the plan. *Salmon v. Laser Plot, Inc.*, 189 B.R. 559, 561–62 (D.Mass.1995) (interpreting a Chapter 11 plan in accord with the general rule that "an ambiguous contract should be construed against the drafting party"); *Miller v. United States*, 253 B.R. 455, 459 (Bankr.N.D.Cal.2000) (same).

Since Fareed's confirmed plan effectively provides for payment of Household's § 506(a) allowed secured claim, and because the value of that claim was fixed at the time of confirmation in the amount stated in Household's proof of claim, Fareed cannot now challenge that aspect of the proof of claim. Accordingly, Fareed's motion for valuation of collateral, styled as a claim objection, must be denied.

### Conclusion

For the reasons stated above, the objection of Marilyn Fareed to the claim of Household Automotive Finance Corporation is denied. A separate order will be issued in conformity with this decision.

---

6. "Motions to dismiss"—as defined in Fed. R.Civ.P. 12(b)—are appropriate under Fed. R. Bankr.P. 7012 only in adversary proceedings, not in contested matters; bankruptcy courts do not hear motions to dismiss other motions.