In the Matter of Todd Michael TAYLOR, Tracy Lynn Taylor, Debtors.

No. 01–14230.

United States Bankruptcy Court, N.D. Indiana, Fort Wayne Division.

Jan. 23, 2003.

Steven J. Glaser, Fort Wayne, IN, for debtors.

Wendy A. Kitchel, Indianapolis, IN, Bruce de'Medici, Oak Park, IL, for creditors.

## DECISION

ROBERT E. GRANT, Bankruptcy Judge.

These cases[1] are all pending under chapter 7 of the United States Bankruptcy

---

1. This decision is also being entered in con- nection with cases 02–40069 *Rushing,* 99–

Code and present a similar question concerning claims that have been filed against the estate. In each of them, one or more creditors have filed a proof of claim as a secured creditor with a lien upon property of the debtor. The trustee has decided not to liquidate that collateral and it either has been or will be abandoned upon the closing of the case. *See,* 11 U.S.C. § 554. The trustees have filed objections to each of these claims asking the court to deny or disallow them. The basis for each objection is that the trustee has not administered the creditor's collateral. No response to any of the objections was filed within the time required by the local rules of this court. Nonetheless, when it came time to rule, the court raised the question of whether the grounds for the objection— that the trustee did not administer or sell the creditor's collateral—constituted a sufficient reason to completely deny the claims. Accordingly, the court scheduled a hearing at which the issue could be considered, which was attended by the case trustees and the United States Trustee. Briefs were subsequently submitted and the issue was then taken under advisement.

The court recognizes that each of the creditors in question has been served with a copy of the trustee's objection, as well as the required notice of it, and there has been no response within the time required by the local rules of this court. *See,* N.D. Ind. L.B.R. B–3007–1. Not only have these creditors failed to respond to the objections, they also failed to attend the hearing the court held in order to address its concerns. Similarly, none of the creditors involved have chosen to submit a brief directed to the issues the court has identified. If such a demonstrable and consistent lack of interest constituted a sufficient reason to rule against an absent party, the court would have no problem sustaining the objections. Unfortunately, it is not.

In traditional civil litigation, the defendant's failure to respond to a complaint against it does not mean that the plaintiff is entitled to the relief it seeks. *Nishimatsu Const. Co. Ltd. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975). Instead, the default is nothing more than an admission of the well pleaded factual allegations contained in the complaint. *Id.* Before the plaintiff is entitled to the entry of judgment in its favor, those allegations must still state a legitimate claim for relief. *Id.* Consequently, in passing upon a request for a default judgment, the court has a duty to examine those allegations and satisfy itself that the entry of judgment based upon them would be appropriate. *See, Weft, Inc. v. G.C. Inv. Associates,* 630 F.Supp. 1138, 1141 (E.D.N.C.1986), aff'd sub nom *Weft, Inc. v. Georgaide,* 822 F.2d 56 (4th Cir.1987). *See also, Aldabe v. Aldabe,* 616 F.2d 1089, 1092 (9th Cir.1980)(affirming trial court's denial of motion for default judgment and sua sponte dismissal due to the complaint's failure to state a claim for relief). Indeed, this is one of the reasons that the court may hold a hearing and receive evidence in connection with motions for the entry of judgment by default. *See,* Fed.R.Civ.P. Rule 55(b)(2). *See also, In re Liu,* 282 B.R. 904, 907–908 (Bankr.C.D.Cal.2002).

The effect of a default in bankruptcy litigation is no different than in traditional civil litigation. This is clearly the case where adversary proceedings are concerned. *See, Matter of Park,* 272 B.R.

40145 *Allen,* 01–41345 *Wood,* 01–41457 *Haas,* 01–41433 *Pritts,* 01–41307 *Hemphill,* 01–14030 *Edwards,* 01–13552 *Ratliff,* 98–12986 *Hamming,* 97–12059 *Kelsaw,* 01–11455 *Chaf-* fin, 00–12343 *Rea,* 01–14428 *Reed,* 01–13348 *Younger,* 01–13820 *Seifert,* and 00–11442 *Fikes Plastic.*

323, 328—329 (Bankr.N.J.2001) (denying unopposed motion for default judgment); *In re Bui*, 188 B.R. 274 (Bankr.N.D.Cal. 1995) (denying unopposed motion for default judgment due to plaintiff's failure to make out a prima facie case). It is also the rule in connection with the motions and other requests initiating the contested matters that constitute so much of bankruptcy litigation. *See,* Fed. R. Bankr.P. Rules 9014, 7055 (applying rule 55 of the Federal Rules of Civil Procedure to contested matters); *In re Wall,* 127 B.R. 353, 355 (Bankr.E.D.Va.1991) (denying unopposed motion to avoid judicial liens). *See also, Gadoury v. United States,* 187 B.R. 816, 821—822 (D.R.I.1995) (discussing defaults in contested matters and the application of Rule 55); *In re Senyo,* 82 B.R. 401, 402 (Bankr.W.D.Pa.1988). Consequently, whether in connection with adversary proceedings or contested matters, before a litigant is awarded the relief it seeks when the opposing party fails to respond, the court needs to satisfy itself that the facts before it demonstrate a prima facie entitlement to that relief. Thus, howsoever much the court would like to sustain the trustees' objections to these claims just because the creditors have failed to respond, it cannot properly do so. Instead, it must satisfy itself that the facts the trustees have alleged in their objections constitute a legally sufficient reason for denying an otherwise properly filed claim. This is especially so since such a claim is prima facie evidence of both the validity of the debt and the amount due. Fed. R. Bankr.P. Rule 3001(f).

■■■ A claim is a right to payment, whether secured or unsecured. 11 U.S.C. § 101(5). Because of this, the first step in the claims process is always to determine whether there is a right to payment. If not, the inquiry is at an end. If, however, the answer to the question is yes and the creditor holds a lien upon property, the court must then determine whether the claim is a "secured claim" as that term is defined by the Bankruptcy Code. *See,* 11 U.S.C. § 506(a). In order to have a secured claim, the creditor must not only have a lien upon property but its collateral must also be property of the bankruptcy estate. *Id.; In re Wilson,* 206 B.R. 808, 810 (Bankr.W.D.N.C.1996) (claim secured by property that is not property of the estate is not a secured claim). Furthermore, that collateral must have sufficient value so that, upon liquidation, its sale would generate proceeds which could be paid to the creditor on account of the lien. Consequently, determining secured claims against a bankruptcy estate is really a process which involves at least three separate steps. The first step answers the question of whether there is a right to payment. If so, the second asks whether the claim is secured by a lien upon property of the bankruptcy estate, and the third involves a valuation of that collateral. *See,* Ginsberg & Martin on Bankruptcy, § 10.08(N) (4th ed. Supp.1998). *See also, In re Beard,* 112 B.R. 951, 955 (Bankr. N.D.Ind.1990) (identifying three different ways a secured claim may be challenged). It is important to remember, however, that each of these steps represents an independent inquiry and the failure to successfully complete one step does not change the conclusions that were reached earlier in the process. *Cf. In re Jones,* 152 B.R. 155, 161 (Bankr.E.D.Mich.1993) (generally, the value of a creditor's collateral has no bearing on the allowability of its claim). In other words, the fact that a creditor's collateral it not worth enough to generate proceeds that can be paid on account of its lien does not mean that either the debt or the lien did not exist; only that the lien was worthless. Similarly, the fact that a creditor does not hold a lien upon property of the estate does not mean there is no

underlying right to payment; only that the claim is not "secured" in the bankruptcy sense of the word.

The objections the trustees have filed in each of these cases are essentially the same. All of them involve claims which have been filed as secured and the objections are based upon the proposition that the trustee did not administer or sell the creditors' collateral. As a result, the court has been asked to deny the claims. The problem with these objections is that, even though everything the trustees' have said is true, those facts do not implicate any of the statutory reasons which Congress has determined warrant denial of a claim and they do not undermine the prima facie effect given to a properly filed proof of claim.

■■■ A properly filed proof of claim "constitute[s] prima facie evidence of the validity and the amount of the claim." Fed. R. Bankr.P. Rule 3001(f). Pursuant to § 502 of the United States Bankruptcy Code, claims are deemed allowed unless objected to. 11 U.S.C. § 502(a). In the event an objection is filed, the Bankruptcy Code also provides guidance for determining the amount of the creditor's claim and the reasons why it may be denied. The court is directed to determine the amount of the claim "... as of the date of [the] petition, and shall allow [the] claim in [that] amount, except to the extent that" one or more of nine separate sets of circumstances may be found to exist. 11 U.S.C. § 502(b)(1)-(9). The term "shall" is mandatory and generally acts as a command. *Anderson v. Yungkau*, 329 U.S. 482, 485, 67 S.Ct. 428, 91 L.Ed. 436 (1947). Congress' use of the word "shall" in § 502(b) indicates that the court has no discretion and that it cannot deny a claim for reasons beyond those stated in the statute. *Cf., Petro v. Mishler*, 276 F.3d 375, 378 (7th Cir.2002) (court must confirm

a chapter 13 plan that complies with the requirements of the statute and may not use its equitable powers to expand those requirements); *Matter of Fesco Plastics*, 996 F.2d 152, 156 (7th Cir.1993) (court may not use its equitable powers to create exceptions beyond those contained in the Code). Consequently, a claim may not be denied for just any reason, but only for one of the reasons Congress has included in § 502(b). *In re Fareed*, 262 B.R. 761, 765 (Bankr.N.D.Ill.2001). *See also, In re Hausladen*, 146 B.R. 557, 559 (Bankr. D.Minn.1992).

■■■ The combination of these different principles requires that, to be proper, an objection to a proof of claim must allege facts which, if accepted as true, would trigger one of the statutory reasons for denying a claim. If it does not, the objection should not be sustained. This remains true even if the creditor lacks sufficient interest to respond. Consequently, the question before the court is whether the trustees' objection—that the creditors' collateral has not been administered—corresponds with one of the statutory reasons for denying a claim.

■■■ The first reason for denying a claim is that it is unenforceable under applicable non-bankruptcy law. 11 U.S.C. § 502(b)(1). This clearly is not the basis of the trustees' objections since they are asserting a bankruptcy reason—the way the estate was administered—for denying the claims. Nothing about the objections would indicate that the trustees believe the creditors are seeking unmatured interest, so § 502(b)(2) does not apply. The claims are not for property or employment taxes so sub-paragraphs (b)(3) and (b)(8) are not implicated. Nor are they for the services of an insider or an attorney or even an employee of the debtor, so sub-paragraphs (b)(4) and (b)(7) are not triggered. The claims are not for unpaid alimony, mainte-

nance or support, *see*, 11 U.S.C. § 523(a)(5), neither do they arise out of a lease so we can forget sub-paragraphs (b)(5) and (b)(6). The claims are also timely, so we need not concern ourselves with the final reason for denial. *See*, 11 U.S.C. § 503(b)(9).

The trustees' objections implicate none of the statutory reasons for denying a claim. They do nothing to undermine the prima facie validity of either the creditors' right to payment or the amount they say was due on the date of the petition. Accepting everything in the objections as being true, the evidentiary effect of a properly filed proof of claim is unimpaired and neither the validity nor the amount of the claim is eroded. Consequently, based upon the Bankruptcy Code and the applicable rules of procedure, the objections should be overruled.

The creditors all have claims—a right to payment—which, based upon the standards set out in § 502, should be allowed. The trustees argue, however, that such a result would be unfair to the debtors' other creditors. Those creditors have no liens upon any property securing the amounts due them and their only chance for any payment lies in the distribution they will receive from the bankruptcy estate. Unlike the other creditors, the creditors whose claims have been objected to all hold liens upon the debtors' property and they will be able to look to that collateral in order to recover the amounts due them, in addition to whatever distribution they may receive from the estate. From the trustees' point of view, to diminish the distribution to other creditors by allowing creditors holding liens to participate in a distribution of the estate's unencumbered assets is unfair. In their opinion, the equitable outcome is one that does not diminish the distribution to the creditors who have no liens whatsoever. They seek to accomplish this result by having the court deny the claims of creditors holding liens. The United States Trustee advances a similar equitable argument. Rather than denying the claims, however, the U.S. Trustee suggests that the court should allow them and, in the process of doing so, enter an order which provides that they shall not receive any distribution from the bankruptcy estate.

 The court fully recognizes the appeal of the equitable arguments that are pressed upon it and the inequity of allowing creditors with liens upon the debtors' property to ratably share a distribution from the bankruptcy estate before they have exhausted their collateral. Indeed, the possibility for this type of inequity is not limited to bankruptcy proceedings. It is the foundation of the equitable doctrine of marshaling.[2] Consequently, there is nothing wrong with the goal the trustees seek. Nonetheless, before the court becomes overwhelmed by the equities of the situation, it should first examine the statutory framework to determine whether the perceived "unfairness" actually exists and, to the extent it does, whether the Bankruptcy Code may not already contain a solution. This requires the court to move into the second and third steps of the secured claim analysis.

 Determining whether a claim is a "secured claim" is entirely separate from

---

**2.** Marshaling is designed to prevent a senior creditor from undermining the rights of creditors having less security. Where a senior creditor has two funds out of which to satisfy its claim and junior creditors have recourse to only one of those funds, the senior creditor may be required to exhaust the fund available exclusively to it before proceeding against the fund available to junior creditors. *First Nat'l Mercantile Bank and Trust Co. v. Hazen*, 96 B.R. 924, 926 (W.D.Mo.1988) (citations omitted).

determining whether that claim should be allowed. *Fareed,* 262 B.R. at 765. The inquiry involves completely different sections of the Bankruptcy Code and different procedural rules. The process is governed by § 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012 and it requires the court to place a value upon the lien the creditor holds upon property of the bankruptcy estate.[3]

■ Unlike the claims process, where doing nothing automatically leads to the allowance of a claim, Bankruptcy Rule 3012 contemplates a judicial determination of the creditor's secured status. Norton Bankruptcy Rules Pamphlet (2002–2003 Ed.) Rule 3012, editor's comment, p. 205. In yet another distinction from the claims process, this determination is not aided by any presumptions concerning the value of the creditor's collateral.[4] The party who wants the court to make this determination initiates the process by filing a motion, which is then heard on notice to the creditor and such other entities as the court may direct.[5] Fed. R. Bankr.P. Rule 3012. Based upon the information presented to it, the court will determine the value of the property securing the creditor's claim and, from that, the value of its lien. This valuation then becomes the creditor's secured claim and any remaining amount due it— the balance of its allowed claim—is an unsecured claim. *U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 239–40, 109 S.Ct. 1026, 1029, 103 L.Ed.2d 290 (1989). *See also, Associates Commercial Corp. v. Rash,* 520 U.S. 953, 960–61, 117 S.Ct. 1879, 1884—1885, 138 L.Ed.2d 148 (1997).

■ It may come as a bit of a surprise but Chapter 7 of the Bankruptcy Code contains no provisions for making distribution on account of secured claims. With only two exceptions, the priority and

---

**3.** To have a "secured claim" in the bankruptcy sense of the term, it is not enough to have a lien upon just any property. Instead, the creditor must have a lien upon property of the bankruptcy estate. 11 U.S.C. § 506(a) (a claim is secured to the extent of the creditor's interest in the estate's interest in property). Consequently, unless a creditor's collateral is also property of the bankruptcy estate, the Bankruptcy Code characterizes its claim as unsecured. *Wilson,* 206 B.R. at 810 (lien on an asset which is not property of the estate does not give the creditor a secured claim). This is true whether the creditor's collateral never became property of the bankruptcy estate or was abandoned from it. *In re Dewsnup,* 908 F.2d 588, 591 (10th Cir.1990), *aff'd Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992).

**4.** Because the official form for a proof of claim asks the creditor for information concerning the nature and value of any security, many litigants (and some judges) mistakenly assume that the presumption of accuracy which flows from the prima facie effect given to a properly filed proof of claim also includes the creditor's opinion concerning the value of its security. This is wrong. A proof of claim is prima facie evidence only as to the validity and the amount of the debt. Fed. R. Bankr.P. Rule 3001(f). In other words, it is limited to the questions of liability and damages. These issues are entirely separate from the question of collateral valuation. The failure to recognize these distinctions can lead to a great deal of mischief if the two inquiries are co-mingled or if the procedures and presumptions associated with the process for allowing claims are allowed to influence consideration of other issues involving secured creditors.

**5.** A motion to determine secured status under Rule 3012 is not the only way in which the value of a secured creditor's collateral may be raised. In cases under Chapters 11, 12 and 13, the plan proponent may properly initiate the valuation process in proposing the plan. *Nobelman v. American Savings Bank,* 508 U.S. 324, 328–29, 113 S.Ct. 2106, 2110, 124 L.Ed.2d 228 (1993). Valuation issues may also arise in connection with other requests such as redemption under § 722, relief from stay under § 362(d), and abandonment under § 554. Nonetheless, Rule 3012 ensures that the question of a creditor's secured status can be raised independently of any other issue.

nonpriority claims that are to receive a distribution of the estate's assets are specifically denominated as "unsecured claims." *See,* 11 U.S.C. §§ 507(a), 726(a). Since the Bankruptcy Code does not address the payment of secured claims in Chapter 7 cases, we need to look to non-bankruptcy law to fill this gap. *Matter of FBN Food Services, Inc.,* 82 F.3d 1387, 1396 (7th Cir.1996). ("Once the rules established by the Code have been exhausted, remaining entitlements come from outside bankruptcy, which is to say from state law."). This is especially appropriate where secured claims are concerned because the rights of secured creditors are created by state law, and those rights are not analyzed any differently simply because of the bankruptcy proceeding. *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). Consequently, if, during the administration of the bankruptcy estate, the creditor's collateral is liquidated, its secured claim is paid out of the sale proceeds. *See, In re Swann,* 149 B.R. 137, 145 (Bankr.D.S.D. 1993) ("Proceeds from a trustee's sale of property are first used to extinguish any valid liens on the property, after which, the remaining proceeds will be distributed to satisfy claims against the estate in accordance with the provisions of Section 726.") (citing *In re Lambdin,* 33 B.R. 11, 13 (Bankr.M.D.Tenn.1983)). *See also, U.S. v. Federal Deposit Insurance Corporation,* 899 F.Supp. 50, 54 (D.R.I.1995). If its collateral is not sold, the creditor's lien will pass through the bankruptcy process unaffected, unless some action is taken in order to avoid it under a provision of the Code such as § 522(f). *Matter of Pence,* 905 F.2d 1107, 1109 (7th Cir.1990). *See also, Long v. Bullard,* 117 U.S., 617, 6 S.Ct. 917,

29 L.Ed. 1004 (1886); *In re Tarnow* 749 F.2d 464 (7th Cir.1984).

Whether an allowed claim is also a secured claim is determined only by the value of the creditor's lien upon property of the bankruptcy estate. Whether or not that property is sold does not matter.[6] Yet, unless that property is sold there will be no distribution on account of the secured claim. In the absence of such a sale, secured claims simply are not in the queue which leads to a distribution from the estate; only the unsecured portion of the total claim would be in line to share. 11 U.S.C. §§ 507(a), 726(a). Because of this, the unfairness which the trustees perceive to flow from allowing secured claims to share in a distribution of the unencumbered assets of the bankruptcy estate simply does not exist. Thus, the court does not need to deny those claims (or as the U.S. Trustee suggests allow them with the proviso that they will not share in any distribution) in order to achieve the equitable result they seek. That result is already provided for by the structure of the Bankruptcy Code and the interplay between state and federal law that takes place in the bankruptcy process.

Because the threshold issue in determining whether an allowed claim is also a secured claim is the presence of a lien upon property of the estate, if the creditor's collateral has been abandoned or was never part of the estate its entire claim would be categorized as unsecured. In this situation, allowing that entire unsecured claim to ratably share a distribution along with other unsecured creditors presents a very real possibility for the unfair-

**6.** All the liquidation of the creditor's collateral does is to make the valuation process easier by giving greater certainty to the numbers the court has to work with. Rather than dealing with estimates, opinions or appraisals, which may be somewhat uncertain, when the creditor's collateral has been turned into cash we know precisely what its lien is worth.

ness the trustees perceive.[7] Nonetheless, the court does not need to deny the creditor's claim in order to remedy that unfairness. The Bankruptcy Code and the applicable rules of procedure contain another mechanism for dealing with it.

■ The Bankruptcy Code authorizes the court to, "under the principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim ...." 11 U.S.C. § 510(c)(1). Given the rationale behind the doctrine of marshaling, the unfairness the trustees point to would seem to present a situation calling for the equitable subordination of a claim which is unsecured only because the lien securing it is not upon property of the bankruptcy estate. *Bostian v. Schapiro (In re Kansas City Journal–Post Co.)*, 144 F.2d 791, 800 (8th Cir. 1944) ("the fundamental aim of equitable subordination is to undo or offset any inequity in the claim position of a creditor that will produce injustice or unfairness to other creditors in terms of the bankruptcy results."). *See also,* 11 U.S.C. § 508 (subordinating claims of creditors that receive certain distributions outside of the bankruptcy case). This is essentially what the U.S. Trustee's proposed solution calls for when it suggests we allow these claims but in doing so also have the order go on to provide that they will not receive any distribution, unless other claims are fully satisfied. While an appealing solution, this type of equitable relief is not available either as a contested matter or through the claims process.

■ The Federal Rules of Bankruptcy Procedure require an adversary proceeding "to subordinate an[ ] allowed claim

...." Fed. R. Bankr.P. Rule 7001(8). When the procedural rules require that particular relief be sought through an adversary proceeding, the opposing party has the right to expect that they will be followed. *In re Commercial Western Finance Corp.,* 761 F.2d 1329, 1336–38 (9th Cir.1985). Furthermore, the court has an obligation to police the line which separates adversary proceedings from contested matters. Consequently, unless it has the consent of all concerned, the court should not award relief using the procedures that apply to contested matters when the rules of procedure require an adversary proceeding. *Matter of Perkins,* 902 F.2d 1254, 1258 (7th Cir.1990); *Pence,* 905 F.2d at 1109.

The court acknowledges the equity of the result the trustees and the United States Trustee seek. The court also realizes that motions to determine secured status and adversary proceedings may be more cumbersome and inefficient than the path they ask the court to follow. That, however, is the path the Bankruptcy Code and the rules of procedure prescribe. Ignoring the requirements of both the law and the applicable rules of procedure in a rush to do equity will rarely achieve an equitable result. *Cf., Uhl v. Thoroughbred Technology and Telecommunications, Inc.,* 309 F.3d 978, 985 (7th Cir.2002)("a district court may not abandon the Federal Rules merely because a settlement seems fair, or even if the settlement is a 'good deal.' "). Quite to the contrary, if the courts are not willing to observe the requirements of the law and the applicable rules of procedure, how can we hope that anyone else will ever do so? To knowingly disregard those requirements will encourage litigants to cut corners and help to

---

7. At least two of the creditors whose claims have been objected to—Ford Motor Credit in *Hemphill* and CitiMortgage, Inc. in *Haas*—

have obtained orders abandoning some, if not all, their collateral.

spawn a legal culture that not only wants to cut corners but then wants to cut ever larger and larger corners, resulting in a progressive deterioration which, if left unchecked, can only lead to chaos. Admittedly, the future of civilization as we know it does not depend upon what this court does with the trustees' objections to the claims presently before it. Nonetheless, when the Bankruptcy Code and the applicable rules of procedure already provide an answer to a particular problem, the court should not disregard that solution and use its equitable powers to create alternative remedies. *See, Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206–07, 108 S.Ct. 963, 968–69, 99 L.Ed.2d 169 (1988) (the court's equitable powers can only be exercised only within the confines of the Bankruptcy Code).

The trustees' objections will be overruled. Orders doing so will be entered.