**In re James Craig CLUFF and Kathleen Clark Cluff, Debtors.**

**In re Tomas Medina, Debtor.**

Nos. 03–32779, 03–39152.

United States Bankruptcy Court, D. Utah.

Aug. 23, 2004.

---

40. *Lang,* 276 B.R. at 722.

Lee Rudd, Salt Lake City, for James and Kathleen Cluff & Tomas Medina.

Stephen Dourgherty, Anderson and Kerrenberg, Salt Lake City, for eCast Settlement Corporation and American Express Travel Related Services Company, Inc., Creditor.

Daniel R. Robison, St. George, for James and Kathleen Cluff.

C. Val Morley, Pleasant Grove, for Nebo Credit Union.

Kevin R. Anderson, Salt Lake City, UT, Chapter 13 Trustee.

## MEMORANDUM DECISION REGARDING OBJECTIONS TO CLAIMS

JUDITH A. BOULDEN, Bankruptcy Judge.

The Debtors in these claims objections proceedings (collectively the "Debtors") ask the Court to establish a bright line test to disallow unsecured claims because of a creditor's failure to attach to the claim the writing upon which the claim is based. The Debtors' do not object to the claims because they assert the amounts are not owed; instead they argue that the documentation attached to the claims, if any, does not fulfill the requirements of Fed. R. Bankr.P. 3001(c) and therefore the claims should be disallowed. Because of the basis upon which the Debtors' object to the claims, this Court is not able to rule on the actual allowance or disallowance of the claims, and the Debtors' attorney has admitted that such a determination may be premature. Instead, the Debtors' objections lead the Court's analysis into the realm of burdens of proof and

evidentiary presumption in the claims allowance process. But in the end, the Court declines the Debtors' invitation to establish a rule that disallows creditors' claims solely for insufficiency of documentation, and instead requires the Debtors to also present evidence that rebuts the merits of the creditors' claims. The Court concludes, therefore, that the Debtors have failed to present sufficient evidence to shift the burden of proof to the creditors to prove their claims against the estates, and as a result all the claims objections based upon the creditors' failure to attach documentation are overruled.

## I.  FACTS

For ease of understanding the context of each objection, the undisputed evidence received consisting of the information listed in the Debtors' schedules and the creditors' claims are set forth in table form below. In the Cluffs' case, all of the claims were originally listed as undisputed, liquidated, and non-contingent, but subsequently amended to disputed after the objecting parties pointed out that fact in their briefs. In the Medina case, all claims remain listed as undisputed, liquidated, and non-contingent.

*James and Kathleen Cluff—03–32779* (the "Cluffs")

| Claim No. | Creditor as Listed in Claim | Claim Amount and Account No.[1] | Amount, Account No. and Creditor Listed in Schedules | Documentation Attached |
|---|---|---|---|---|
| 5 | Discover Financial Services | $ 7,940.97 62905 | $7,940.00 undisputed 62905 (Discover) (Amended 5/24/04 $7940.97 & disputed) | 11/20/03 statement summary which includes name, account number and amount of debts |
| 6 | Dillard National Bank | $ 2,907.30 78373 | $3,007 undisputed 78373 (Dillards) (Amended 5/24/04 $2,907.30 & disputed) | 7/03 billing statement which includes name, account number, finance charge, due date, total amount of debt, and amount of scheduled payment |
| 9 | American Express Travel Related | $ 9,202.57 92004 | $8,950.00 undisputed 92004 (American Express) (Amended 5/24/04 $9,202.57 & disputed) | Account summary listing balance from 6/03—11/03. The document includes name, account number, collection status and amount due. |
| 10 | Met Life Auto & Home | $2,975.24 | $2,975.00 undisputed (Met Life Auto & Home) (Amended 5/24/04 $2,975.24 & disputed) | Debtors' Chapter 13 plan dated 11/21/03 |
| 12 | Citibank USA, as issuer/service provider or purchaser of acct. from Sears, | $ 2,219.06 50212 7 | $2,231.00 undisputed 502127 (Sears Payment Center) (Amended 5/24/04 $2,219.06 & | 12/15/03 account statement including name, account number, amount and date the account was opened. |

1. For privacy reasons, only the last few numerals of the account numbers are listed.

| | | | | |
|---|---|---|---|---|
| | Roebuck and Co. and/or Sears National Bank | | disputed) | |
| 13 | Nordstrom FSB | $ 3,779.60 2419 | $3,770.00 undisputed 2419 (Nordstrom Bank) (Amended 5/24/04 $3,779 & disputed) | Charge-off Account Detail which includes name, account number, amount, and a note that case was converted |
| 16 | Fleet Bank (RI) N.A. and its assigns by eCAST Settlement Corporation, as its agent | $ 8,721.78 9976 | $8,000 undisputed 9976 (Fleet Credit Card) (Amended 5/24/04 $8,721.78 & disputed) | Account summary which includes name, account number, amount, previous balance, annual percentage rate and a letter authorizing eCAST Settlement to file proof of claim and transferring account to eCAST |
| 17 | IHC/ARC | $ 382.25 0942 | $400 undisputed 1679 (Medical: various accounts) (Amended 5/24/04 $382.25 & disputed) | Account summary— itemized, debtor's social security number, and listing accounts 0942, 1679 and 2662 |
| 18 | Discover Financial Services | $10,322.54 1359 | $10,091.00 undisputed 1359 (Discover) (Amended 5/24/04 $10,322.54 & disputed) | 7/03 account summary—not itemized—lists name, account number, amount, finance charge for billing period & penalty for late payment & power of attorney appointing Discover Financial Services, Inc. |
| 20 | Capital One F.S.B. | $ 930.45 9280 | $997.00 undisputed 9280 (Capital One) (Amended 5/24/04 $930.45 & disputed) | Account summary for proof of claim which includes name, account number, amount & statement that principal, interest & fees are pre-petition totals. |
| 23 | eCast Settlement Corp.— Merchant: Bernina | $ 5,875.90 9111 | Not scheduled as unsecured. Retail Services listed as secured creditor secured by sewing machine. $5,807.00, undisputed and to be reaffirmed 9111 (Amended 5/24/04 Retail Services (Bernina) | None |

$5,875.90 &
disputed)

*Tomas Medina—03–39152* (Medina)

| Claim No. | Creditor as Listed in Claim | Claim Amount and Account No. | Amount, Account No. and Creditor Listed in Schedules | Documentation Attached |
|---|---|---|---|---|
| 2 | Meier & Frank | $ 951.12 4938353 | $ 909.00 4938353 (Meier & Frank) | 12/10/03 account statement which includes name, account number, amount and payment date. |
| 6 | GE Capital Consumer Card. Co (Dish Network) | $3,803.46 419665 | $3,741.00 Social Security # (GECCC/Echo Star) | 10/05/03 account statement which includes name, account number (listed as 153770), due date, finance charge, annual percentage rate, a change of payment address notice & chapter 13 plan dated 11/5/03 |
| 10 | US Bank/ Elan/Retail Payment Solutions Bankruptcy— Recovery Dept. | $7,350.78 0270 | $7,104.00 0270 (US Bank) | 12/24/03 account summary which includes name, account number, social security #, amount & date of last payment |
| 11 | Sherman Acquisition, LP Resurgent Capital Services | $3,036.19 8983655 | $2,932.00 898655 (Citi) | Unsecured proof of claim account detail which includes name, amount, creditor info., & account number |
| 12 | Sherman Acquisition, LP Resurgent Capital Services | $2,513.51 0737928 | $2,461.00 0737928 (AT & T Universal Card) | Unsecured proof of claim account detail which includes name, amount, creditor info., & account number |
| 13 | Fleet Bank (RI) N.A. & its assigns by eCAST Settlement Corp. | $7,127.16 9965 | $6,652.00 9965 | 11/9/03 account statement which includes name, account number, amount due, previous balance, finance charge, total minimum payment, over |

eCast Settlement Corporation and American Express Travel Related Services Company, Inc. filed responses to some of the Cluffs' claims objections, and the Chapter 13 Trustee also replied, but many of the creditors chose not to respond. A hearing was held and the claims objections taken under advisement. Because these contested matters raise common issues, the Court has determined to issue a single memorandum decision to resolve the matters.

## II. DISCUSSION

### A. INTRODUCTION

A claim, as defined by 11 U.S.C. § 101(5),[2] is a "right to payment ... or ... right to an equitable remedy."[3] Section 501(a) provides that a creditor having such a right to payment or an equitable remedy may file a proof of claim in a debtor's case.[4] The substantive basis for the allowance of a claim is governed by §§ 501 and 502.

■ The Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") govern the procedure for obtaining a determination of whether a filed proof of claim may share in the distribution of an estate, and those Bankruptcy Rules should be "construed to secure the just, speedy, and inexpensive determination ..." of any disputed claims.[5] To that end, the Bankruptcy Rules instruct a claimant regarding a uniform format for asserting a claim. While other forums require a similar demand for payment to be made by complaint and proven at trial, the Bankruptcy Rules establish a short-hand procedure to resolve creditors' rights to payment from the estate.[6] Claims filed consistent with the Bankruptcy Rules and Official Form 10 are more than simply a pleading containing arguments and assertions; they are evidence of the claim.

■ The procedure for the filing of a claim is governed by Bankruptcy Rule 3001, among others. Bankruptcy Rule 3001(f) deems an unsecured proof of claim *prima facie* evidence of the validity and the amount of the claim if it meets the conditions in Bankruptcy Rule 3001(c), and the claim is allowed unless a party in interest objects.[7] So without an evidentiary hearing, the framework allows a claim without a hearing in furtherance of a speedy resolution of the estate. If the claim meets the *prima facie* standard and no objections are filed, trustees may distribute assets of the estate based on such claims.

---

**2.** Future references are to title 11 of the United States Code unless otherwise noted.

**3.** § 101(5).

**4.** Section 501(a) states: "A creditor or an indenture trustee may file a proof of claim."

**5.** FED. R. BANK. P. 1001. All future references are to the Federal Rules of Bankruptcy Procedure unless otherwise indicated.

**6.** This short-hand process is not entirely analogous to a state court determination. A creditor need not present at a claim objection hearing all of the evidence needed to obtain a judgment in state court.

**7.** § 502(a) and Bankruptcy Rule 3001(f).

Under § 502(b), if an "objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim ... as of the date of filing the petition, and shall allow such claim" [8] except for the reasons listed in subsections (1)-(9) such as lack of enforceability against the debtor, unmatured interest, valuation, limitation on lease and termination damages, and timeliness. Sections 502(d) and (e) set forth additional grounds for disallowance of claims asserted by entities from which a trustee recovers property, or for reimbursement or contribution of an entity that is liable with the debtor under certain circumstances.[9] This objection procedure allowing contested matter resolution also serves the goal of securing the just, speedy, and inexpensive determination of a contested claim. Usually it is only when an objection to a proof of claim is joined with a demand for relief of a kind listed in Bankruptcy Rule 7001 that a claim objection is removed as a summary proceeding and becomes an adversary proceeding.[10]

## B. ANALYSIS OF BANKRUPTCY RULE 3001

The Debtors in these cases argue that in addition to the carefully drafted statutory reasons for disallowance of a claim listed in § 502(b)(1)-(9), (d) and (e), an unsecured claim evidencing a right to payment should be disallowed when the proof of claim fails to comply with Bankruptcy Rule 3001(c) [11] because the claim does not attach appro-

priate documentation. This Court disagrees with the argument because, as set forth below: (1) Bankruptcy Rule 3001(c) does not create an independent ground to disallow claims; (2) failure to comply with the documentation requirements in Bankruptcy Rule 3001(c) is an evidentiary defect that only deprives a claim of its *prima facie* validity; and (3) failure to comply with Bankruptcy Rule 3001(c) merely results in the claimant having the burden of proof if an objection to the claim is filed, but that objection must meet or surpass the evidence set forth in the claim.

### 1. Bankruptcy Rule 3001 Does Not Create an Independent Reason to Disallow a Claim

Bankruptcy Rule 3001 does not provide substantive grounds for disallowance; it merely determines which party will have the burden of proof moving forward on the objection. Section 502 states that the court "shall allow such claim in such amount, except to the extent that" one of the exceptions found in the statute apply. "The term 'shall' is mandatory and generally acts as a command." [12] Courts have no discretion to disallow claims for reasons beyond those stated in the statute.[13] The House Report Notes to § 502 provide the following summation:

> [Section 502(b)] prescribes the grounds on which a claim may be disallowed. The court will apply these standards if there is an objection to a proof of claim. **The burden of proof on the issue of**

---

**8.** § 502(b).

**9.** § 502(d) and (e).

**10.** Bankruptcy Rule 3007.

**11.** Bankruptcy Rule 3001(c) provides, "[w]hen a claim ... is based on a writing, the original or a duplicate shall be filed with the proof of claim. If the writing has been lost or destroyed, a statement of the circumstances of

the loss or destruction shall be filed with the claim."

**12.** *In re Taylor,* 289 B.R. 379, 384 (Bankr. N.D.Ind.2003) (citing *Anderson v. Yungkau,* 329 U.S. 482, 67 S.Ct. 428, 91 L.Ed. 436 (1947) and relating to disallowance of a secured claim in a chapter 7 proceeding).

**13.** *Id.*

allowance is · left to the Rules of Bankruptcy Procedure.[14]

■ The Bankruptcy Rules do not effect substantive rights, "for when Congress accorded the Supreme Court authority to promulgate the Bankruptcy Rules, it stated '[s]uch rules shall not abridge, **enlarge**, or modify any substantive right.' "[15] The alteration or elimination of a creditor's proof of claim effects a substantive right. Bankruptcy Rule 3001 does not enlarge the Debtors' statutory reasons to disallow a claim; it merely "defines the process by which [the claims] may be effected."[16] Therefore, even if an objecting party files an objection asserting facts in a form sufficient to rebut the presumption of Bankruptcy Rule 3001(f), the objection alone does not "implicate any of the statutory reasons which Congress has determined warrant denial of a claim."[17]

### 2. Compliance With Bankruptcy Rule 3001

If Bankruptcy Rule 3001 does not create an independent reason to disallow a claim, then what is its purpose? Because the Federal Rules of Evidence (the "Evidence Rules") do not give any specific evidentiary effect to particular documents, the Bankruptcy Rules attempt to fill this void by establishing certain minimum standards for proofs of claim.[18] Under Bankruptcy Rule 3001, an unsecured claim must meet the following criteria: it must (i) be in writing; (ii) substantially conform to Official Form 10;[19] and (iii) be executed by the creditor or the creditor's authorized agent.[20] An additional fourth requirement applies only if the claim is based on a writing, in which case the original or duplicate of the writing must be filed with the proof of claim.[21] The purpose of the document is to provide evidentiary support for the claim. A business record, admissible under the hearsay exception provided in Evidence Rule 803(6), would provide evidentiary support, as may a promissory note, contract or negotiable instrument. Only if the proof of claim complies with these provisions, does the claim enjoy *prima facie* evidence of the validity and amount of the claim.[22]

#### a. Based On a Writing

■ Unsecured claims can arise as a result of, among other things, a debtor's obligations created by statute, by operation of tort law, or by contract law. Contract obligations in turn may arise from both written or oral contracts. The issue is which of these potential reasons for claims are included in that group of claims that is "based on a writing," for if the unsecured claim is not based on a writing, no documentation is required to achieve *prima facie* status. The Code does not define the term "based on a writing," so we start, as always, with the language of the Rule itself and its history.[23] The advi-

---

14. S.R. Rep. No. 95–989, ch. 5 at 61 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 5848 (emphasis added).

15. *In re Fesq.*, 153 F.3d 113, 116 (3d Cir. 1998) (quoting 28 U.S.C. § 2075) (emphasis added).

16. *Id.*

17. *Taylor,* 289 B.R. at 384.

18. Fed. R. Bank. P. Rule 3001 advisory committee's note (1983).

19. Bankruptcy Rule 3001(a).

20. Bankruptcy Rule 3001(b).

21. Bankruptcy Rule 3001(c).

22. Bankruptcy Rule 3001(f).

23. Rules promulgated under 28 U.S.C. § 2075 are interpreted under the traditional tools of statutory construction because they are a legislative enactment. *Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 163, 109 S.Ct.

sory committee note [24] to Bankruptcy Rule 3001(c) [25] explains that this subdivision is similar to former Bankruptcy Rule 13–302(c). [26] The term "founded" on a writing was used in the old rule, instead of "based" on a writing used in the new rule. Although "founded on a writing" was also not a defined phrase in the prior Bankruptcy Rules, "the phrase has been construed to refer to obligations *created by* a writing". [27] If, for example, a claim is based on an obligation created by statute, it is not based on a writing. The Sixth Circuit noted that the "purpose of Bankruptcy Rule 13–302(c) was to apprise the bankruptcy court and the trustee of the terms of any writing which formed the basis of a claim." [28] Turning to the current Bankruptcy Rule 3001(c), the plain meaning of

the term "based" has been defined as "the fundamental part of something," and that a claim "based" on a writing would be a claim where the writing constitutes a fundamental part. [29]

Having determined what "based" means, the rather more interesting task is to determine what constitutes a "writing." A dictionary definition of a writing means "anything written or printed; anything expressed in characters or letters; as: (a) Any legal instrument, as a deed, a receipt, a bond, an agreement, or the like." [30] Since the Bankruptcy Rule 3001(c) requirement that a document be attached is essentially an evidentiary requirement, reference to the definition of a writing in the Evidence Rules is relevant to our anal-

439, 102 L.Ed.2d 445 (1988) (citing *INS v. Cardoza–Fonseca*, 480 U.S. 421, 446, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987)).

**24.** Advisory committee notes are entitled to weight in determining Congressional purpose. *Schiavone v. Fortune*, 477 U.S. 21, 31, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986).

**25.** Subdivision (c) of Rule 3001 provides:

(c) Claim Based on a Writing. When a claim, or an interest in property of the debtor securing the claim, is based on a writing, the original or a duplicate shall be filed with the proof of claim. If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim.

**26.** Former Rule 13–302(c) is as follows:

CLAIM FOUNDED ON A WRITING: PERFECTION OF SECURITY INTEREST. When a claim, or an interest in property of the debtor securing the claim, is founded on a writing, the original or a duplicate shall be filed with the proof of claim unless the writing has been lost or destroyed. If lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim. If a security interest is claimed, the proof of claim shall be accompanied by satisfactory evidence that the security interest has been perfected

FED. R. BANKR. P. 13–302(c). *See also N.A.A.C.P. Credit Union v. Louie*, 7 B.R. 145, 146 (E.D.Mich.1980). The former rule was superceded by Bankruptcy Rule 3001(c) on August 1, 1983. *Spiers v. Ohio Dept. of Natural Resources (In re Jenny Lynn Mining Co.)*, 780 F.2d 585, 586 n. 1 (6th Cir.1986) (noting that the "writing" requirement was retained in Bankruptcy Rule 3001(c)).

**27.** *In re Shaver*, 247 B.R. 436, 438 (Bankr. E.D.Tenn.1999).

**28.** *Jenny Lynn Mining*, 780 F.2d at 587 (emphasis added). Although *Jenny Lynn Mining* was determined under the prior rule, the opinion has been consistently cited by courts in subsequently holding that Bankruptcy Rule 3001(c) is inapplicable to claims by taxing authorities based on the apparent distinction between those claims that are based on statute, and those claims based on a writing. *Shaver*, 247 B.R. at 438–39 (citing to nine cases in support).

**29.** *California v. Los Angeles Int'l Airport Hotel Assoc. (In re Los Angeles Int'l Airport Hotel Assoc.)*, 196 B.R. 134, 139 (9th Cir. BAP 1996).

**30.** WEBSTER'S REVISED UNABRIDGED DICTIONARY © 1996 (MIRCA, Inc.1998) *available at* http://dictionary.reference.com/search?q=writing (Aug. 23, 2004).

ysis. The Evidence Rules, made applicable to bankruptcy cases by Evidence Rule 1101, broadly defines a "writing" as "letters, words, or numbers, or their equivalent, set down by handwriting, typewriting, printing, photostating, photographing, magnetic impulse, mechanical or electronic recording, or other form of data compilation."[31]

Incorporating the plain meaning of "writing" with the plain meaning of "based," the Court now determines that the phrase "based on a writing" should be interpreted to include the fundamental part that creates a legal obligation and that is evidenced by any expressive format, set down by hand or typewriting, mechanical or electronic transmissions. Though this is not an exhaustive list of potential formats, this interpretation comports with the purpose of former Bankruptcy Rule 13–302, current Bankruptcy Rule 3001(c), and Evidence Rule 1001. This definition is also inclusive enough to cover circumstances, as is often the case in today's commercial context, where the parties bind themselves through mechanical or electronic media.

### b. What Type of Documents are Sufficient?

■ Having determined how to identify a claim that is "based on a writing," it follows that it is necessary to decide what type of documentation satisfies the requirement of Bankruptcy Rule 3001(c). The simple answer of promissory notes, contracts, or purchase documents is not broad enough to cover many of the claims in these cases. Two credit card companies have responded to the Debtors' claims objections by arguing that if their claims are based on a writing, the documents they have attached to their claims comply with the requirements of Bankruptcy Rule 3001(c). Under the test this Court has articulated, these credit card debts are based on a writing.[32] Every time a debtor uses a credit card it results in an electronic and/or written transmission. Contrary to some of the Debtors' arguments, it is not the underlying credit card agreement that creates the debt—for that only establishes a line of credit that defines the terms of the parties future transactions—it is the actual use of the line of credit that creates the obligation to repay. Each time a debtor uses a credit card, the debtor makes an implied representation of her intent to repay the debt.[33] Whether such use is accomplished through a written or electronic transaction is irrelevant; it is based on a writing.

■ Therefore, in order for a credit card company to fulfill the requirements of Bankruptcy Rule 3001(c), it would have to produce the original or copy of a document, mechanical imprint, or some memorialization of an electronic transmission that formed the fundamental part that creates the legal obligation for each transaction a debtor makes during the period over which the debts were incurred.[34] Requiring a credit card company to come forward with the original credit card agreement and a manifestation of each electronic recording of a transaction, whether it be in

---

**31.** Fed. R. Evid. 1001(1).

**32.** As the Debtors point out, Federal law requires that credit card agreements be in writing, 15 U.S.C. § 1601 *et seq.* (Truth in Lending Act), and state law requires that every credit agreement be in writing, U.C.A. § 25–5–4 (Statute of Frauds).

**33.** *Chevy Chase Bank, FSB v. Kukuk (In re Kukuk),* 225 B.R. 778, 785–86 (10th Cir. BAP 1998).

**34.** *La Capitol Fed. Credit Union v. Melancon (In re Melancon),* 223 B.R. 300, 310–11 (Bankr.M.D.La.1998).

the form of the signed receipt the debtor retains for his or her personal records or the electronic transmission of each use that the credit card issuer records, would unduly burden the parties and would inundate the Court with documents. Such a compilation of information would be lengthy and overly burdensome for all concerned. Consequently, the Court concludes that a summary of the transactions is sufficient for purposes of Bankruptcy Rule 3001(c).

This conclusion is consistent with the requirements of both Official Form 10 and Rule 1006 of the Evidence Rules. Paragraph 8 of Official Form 10 states, "*[a]ttach copies of supporting documents* including ... purchase orders, itemized statements of running accounts.... If the documents are voluminous, attach a summary." [35] Additionally, the instructions to Official Form 10 state:

> [y]ou must attach to this proof of claim form copies of documents that show the debtor owes the debt claimed or, **if the documents are too lengthy, a summary of those documents.** If docu-

ments are not available, you must attach an explanation of why they are not available.[36] The official form specifically instructs claimants to attach summaries of lengthy documents.[37] Evidence Rule 1006 also allows litigants to present summaries, charts or calculations of voluminous writing, recordings, or photographs, which cannot conveniently be examined in court.[38]

To provide parties with sufficient information to ascertain the basis and accuracy of the creditor's claim, the summary attached to the proof of claim should: (i) include the amount of the debts; (ii) indicate the name and account number of the debtor;[39] (iii) be in the form of a business record or some other equally reliable format;[40] and (iv) if the claim includes charges such as interest, late fees and attorney's fees, the summary should include a statement giving a breakdown of those elements. These requirements fulfill the purposes of both Evidence Rule 1006 and Official Form 10, and gives debtors and trustees sufficient information to ascertain the accuracy and basis of the claim asserted.[41] But using a summary also re-

**35.** Official Form 10. (emphasis in original).

**36.** *Id.* (emphasis added). The advisory committee notes to Official Form 10 states that "[i]f the claim includes prepetition interest or other charges such as attorney fees, a statement giving a detailed breakdown of the elements of the claim is required."

**37.** Bankruptcy Rule 9009 vests in the Judicial Conference the power to prescribe and modify the Official Forms. The advisory committee notes to Bankruptcy Rule 9009 state that the use of the forms is obligatory subject only to a standard of substantial compliance. Under Bankruptcy Rule 1001, the Official Forms were promulgated for the same reasons as the Bankruptcy Rules themselves and should be awarded the same deference and weight.

**38.** Fed.R.Evid. 1006.

**39.** *In re Thompson*, 260 B.R. 484, 485–87 (Bankr.W.D.Mo.2001)(holding that a credit

card billing statement which contained the balance, the debtor's account number, the billing cycle closing date, and the minimum payment due was sufficient to overcome the trustee's formal objection that the proof of claim did not contain sufficient documentation). *See also* Advisory Committee Note to Official Form 10 (1991).

**40.** *Central Fidelity Bank v. Denslow (In re Denslow)*, 104 B.R. 761, 765–67 (E.D.Va. 1989) (affirming trial court's admission of computer prepared credit card statements under the business records exception to the hearsay rule). Computer print-outs reflecting stored data may qualify as a business record. RUSSELL, BANKRUPTCY EVIDENCE MANUAL 2003 Ed., § 803.17.

**41.** *In re Bledsoe*, No. 1–03–01609 (Bankr. M.D.Pa. August 4, 2004) (finding that it would be unduly burdensome to require a credit card company to attach a complete transac-

quires the creditor to make the underlying documents available for examination at a reasonable place and time, and such creditors should not underestimate the Court's willingness to compel them to do so. A summary is also not a substitute for lost documents. If, for example, a charged off debt is assigned to a collector who does not have the underlying documents, that fact must be disclosed in the claim and not merely hidden in the guise of attaching a summary. However, a proof of claim that meets these summary requirements, and the other conditions in Bankruptcy Rule 3001, is sufficient to establish a claim's *prima facie* status.

Proof of claim number 16 in the Cluffs' case is an example of a claim that is entitled to *prima facie* validity. The debt is owed to Fleet Credit Card Services, L.P. in the amount of $8,721.78. The proof of claim is in writing, signed by an authorized agent, and substantially conforms with Official Form 10. The debts are based on a writing because the debts (the legal obligations) are evidenced by the monthly charges and fees which were electronically recorded and transmitted into a monthly statement. The creditor has not attached a copy of writings evidencing each transaction: however, as paragraph 8 of Official Form 10 instructs, the creditor has attached to the proof of claim an account

summary of the itemized debts. The summary contains the total amount of the accrued debts, the name and account number of the debtor, and the summary is part of a business record produced by Fleet Card Services on a monthly basis. Additionally, the monthly statement shows, *inter alia,* the minimum payment due, previous balance, finance charge, interest rate, and any purchases or cash advances during the billing cycle. This proof of claim fulfills all of the requirements of Bankruptcy Rule 3001.[42]

### c. What is Needed to Negate the Evidentiary Presumption of a *Prima Facie* Claim?

The Bankruptcy Rules create a presumption of validity for a proof of claim that complies with Bankruptcy Rule 3001. If a proof of claim enjoys this evidentiary presumption, the objecting party has the burden of coming forward with evidence to support its objection and rebut the proof of claim.[43] An objection to a properly filed proof of claim must be in writing, filed, and served.[44] But to negate the presumption of Bankruptcy Rule 3001, the objecting party must mirror the criteria set forth in Bankruptcy Rule 3001.[45] Just as a creditor must file with the court a written statement asserting a right to payment as defined in § 101(5),[46] must ex-

---

tion history because the debt is based on each individual credit transaction) (unpublished). *But see In re Blue,* No. 03 C 6979, 2004 WL 1745786 (N.D.Ill. July 30, 2004) and *In re Henry,* 311 B.R. 813 (Bankr.W.D.Wash.2004), neither of which case addressed the effect of using a valid summary to fulfill the requirements of Bankruptcy Rule 3001(c).

**42.** The creditor has presented additional evidence in response to the Debtors' objections. These documents, in the form of multiple monthly billing statements, are further support of the claim's validity.

**43.** *Wilson v. Broadband Wireless Int'l Corp. (In re Broadband Wireless Int'l Corp.),* 295 B.R. 140, 145 (10th Cir. BAP 2003).

**44.** Bankruptcy Rule 3007.

**45.** *Broadband Wireless,* 295 B.R. at 145 (stating that the objecting party's evidence must be "of probative force equal to that of the allegations contained in the proof of claim").

**46.** Section 101(5) states:
"claim" means—(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed,

ecute the claim by a creditor or its authorized agent, and must attach appropriate documentation if the claim is based on a writing, a party objecting to a *prima facie* valid claim must fulfill similar requirements and come forward with probative evidence of equal force before the Bankruptcy Rule 3001(f) presumption is negated.[47] To negate the *prima facie* validity of a claim, an objection must: (1) assert in a writing filed with the Court that there is some reason the claimant does not have a right to payment; (2) sign the objection; (3) if appropriate, assert that the claim is in fact based on a writing and that the documentation attached to the claim is insufficient; and (4) come forward with some legal reason or some factual evidence to defeat the claim.[48] It is only then that the Bankruptcy Rule 3001(f) presumption can be rebutted. However, it must be noted that regardless of whether a claim is entitled to *prima facie* validity, there are certain legal and statutory objections which are sufficient to disallow a claim.[49] Examples of some of these are objections to duplicate claims because the claimant does not have a right to payment of twice its claim, objections that claims are improper-

ly classified under the criteria of § 507, or objections that claims were untimely filed.

The Court cannot provide the parties with an example of a proof of claim whose *prima facie* validity has been rebutted because none exists in these cases. Neither of the Debtors have fulfilled the requirements articulated above.

### 3. Even if the Claim is Not Considered *Prima Facie*, the Debtor Must Still Present Evidence to Rebut the Evidence in the Claim

Failing to attach the writing required by Bankruptcy Rule 3001(c) "does not automatically invalidate the claim: it does, however, deprive the claim of *prima facie* validity under Bankruptcy Rule 3001(f)."[50] *Prima facie* validity simply means that all the facts in the claim are presumed to be true unless disproved by some evidence to the contrary. If a claim's *prima facie* validity is lost, then the creditor has the initial burden of proving that the claim exists and the amount of that claim.[51] Failure to fulfill this burden results in the disallowance of a creditor's claim.[52] If the creditor presents some evidence in the claim, even though the entire

---

contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (B) right to an equitable remedy . . .

47. A bare statement that there is a lack of documentation is insufficient as a matter of evidentiary burden to destroy the presumption. *Garner v. Shier*, 246 B.R. 617, 623 (9th Cir. BAP 2000).

48. If a court determines a proof of claim is *prima facie* evidence of its validity, then "the objecting party has the burden of going forward with evidence supporting the objection. Such evidence must be of probative force equal to that of the allegations contained in the proof of claim." *Broadband Wireless*, 295 B.R. at 145. (internal citations omitted). *See also In re Holm*, 931 F.2d 620, 623 (9th

Cir.1991) (stating that an objecting party must produce evidence "tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves"). Examples of probative evidence equal in force to the allegations contained in a proof of claim might be an affidavit from a debtor asserting that it is not the obligor on a debt, or an accounting summary listing all of a debtor's credit card charges to show that a debt was improperly calculated.

49. *Broadband Wireless*, 295 B.R. at 145.

50. *Los Angeles Int'l Airport Hotel Assoc.*, 196 B.R. at 139.

51. *Id.*

52. *Id.*

claim it is not *prima facie,* the creditor has still fulfilled its initial burden of proving that fact in its claim unless the evidence is rebutted. Therefore, a claim that contains undisputed or unchallenged evidence on its face still presents evidence of a right to payment or to an equitable remedy. If a claim is not granted *prima facie* validity, a formal objection [53] coupled with some evidence which tends to "meet, overcome, or at least equalize" the statements on the proof of claim is sufficient to rebut the claim.[54] But it is not enough for a debtor to file a mere formal objection without more because the allegations on the face of the proof of claim are more than a mere pleading: they are signed under penalty of up to $500,000 or up to five years in prison. Additionally, the face of the proof of claim provides at least some evidence of a demand for payment from the estate and includes the creditor's name, the account number, and amount of the debt. In order to defeat a claim that contains some evidence, but that is not accorded *prima facie* status, a debtor could make an allegation supported by a signed affidavit, that some or all of the a claim was not owed or that the debt had been satisfied. If the creditor did nothing more, such an objection could be sustained.

Proof of claim number 5 in the Cluff case is not entitled to treatment as *prima facie* evidence of the validity of the claim. The Official Form lists the creditor as Discover Financial Services, the account number, the amount due as $7,940.97, the proof of claim is signed by the creditor's authorized agent, and the basis of the claim refers to "itemized statement attached." The document attached as the itemized statement is a statement summary dated November 20, 2003 which includes the debtor's name, account number, previous balance amount of $8,573.97, a payment due of $638, purchases of $5, and a remaining balance. There is no statement regarding the annual percentage rate applied to this debt, if any, nor is there an itemization of any other charges or late fees listed. A review of the proof of claim indicates that this is a credit card debt, and credit card debts are subject to interest charges. Paragraph 4 of the Official Form instructs creditors to "Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement." The creditor has not checked the box in paragraph 4 indicating that a portion of the claim includes interest, nor has it separately itemized or listed the interest rate on the statement summary.[55] The creditor's proof of claim is not entitled to be treated as *prima facie* evidence of the amount and validity of the claim because it does not fulfill the requirements articulated by this Court. However, because the Cluffs have failed to come forward with "some" evidence to rebut the sworn allegations on the face of the proof of claim, the Court cannot sustain the objection.

## C. ANALYSIS OF CLAIMS

The Court finds that the Debtors have failed to adequately object to the proofs of claim because they have failed to negate

---

**53.** A formal objection is an assertion from a debtor that a claim is deficient yet the objection does not give a legal or factual reason for the objection.

**54.** *In re All–American Auxiliary, Assoc.,* 95 B.R. 540, 545 (Bankr.S.D.Ohio 1989) (citing 3 COLLIER ON BANKRUPTCY, ¶ 502.17) (stating that although the ultimate burden of persuasion is

on the creditor and while the allegations on the face of the proof of claim are given probative force, the objecting party "carries the burden of going forward").

**55.** The Court notes that none of the credit card companies who filed proofs of claim in these cases have checked the box in paragraph 4 of the Official Form.

the claims' *prima facie* validity, have failed to come forward with any evidence to rebut the evidence in the proofs of claim or they have failed to come forward with any evidence to prove that the proofs of claim are actually based on a writing.

### 1. Debtors' Failure to Negate *Prima Facie* Validity

■ Proofs of claim 6, 9, 16, and 18 in the Cluff case [56] and proofs of claim 6 and 13 in the Medina case are considered *prima facie* valid. Each claim appears to be based on a writing because the documents attached demonstrate a legal obligation evidenced by the electronic charges that are transmitted to the account statements and monthly billing statements. The account statements and monthly billing statements are summaries listing the amount of the debts, the name and account number of the Debtors, interest rates or charges, and all are business records. Accordingly, these claims are *prima facie* valid and the burden is upon the Debtors to rebut the claims.

The objections filed by these Debtors fall short of rebutting the evidentiary presumption in four respects. First, the Debtors have not overcome the *prima facie* validity of the claims because they have merely filed pleadings objecting to the claims, without more. A validly filed claim "is more than 'some' evidence; it is, unless rebutted, 'prima facie' evidence. One rebuts evidence with counter-evidence," [57] not merely a statement in a pleading that the proof of claim is not properly documented. Once a claim is afforded *prima*

*facie* validity as to liability and amount, "that evidence is strong enough to prevail over a mere formal objection without more." [58] The Debtors have presented no evidence to rebut the properly filed proofs of claims.

Second, although the objections are in writing, filed with the court, and signed by the Debtors' counsel under penalty of Bankruptcy Rule 9011, [59] none of the objections assert that the Debtors do not owe the debt. Without this or some other legal or factual assertion rebutting the evidence in the claim, there is insufficient evidence contained in the objection to rebut Bankruptcy Rule 3001(f)'s presumption.

Third, the objections do not implicate any of the statutory reasons articulated in § 502(b)(1)—(9) for disallowing claims. The *Taylor* trial court stated:

> [t]he combination of these different principles requires that, to be proper, an objection to a proof of claim must allege facts which, if accepted as true, would trigger one of the statutory reasons for denying a claim. If it does not, the objection should not be sustained. This remains true even if the creditor lacks sufficient interest to respond. [60]

The formal objections do not challenge and certainly do not undermine the *prima facie* validity of the claims.

Finally, the Debtors originally listed these debts on their schedules as uncontested, liquidated, and non-contingent. These acknowledgments are deemed an admission of the debt under the Evidence

---

56. The Court makes no ruling in this decision on the objection to proofs of claim 13 and 17 in the Cluff case because the objections were withdrawn by counsel at the hearing.

57. *Garner,* 246 B.R. at 623.

58. *Id.* (citing *Holm,* 931 F.2d at 623).

59. This is similar to the penalty of perjury statement required in a proof of claim—violation of which holds a penalty of up to $500,000 or imprisonment of up to 5 years for presenting a fraudulent claim.

60. *Taylor,* 289 B.R. at 384.

Rules. Under Evidence Rule 801(d)(2), an admission by a party opponent is admissible as a non-hearsay statement. Evidence Rule 801 defines a statement as an "oral or written assertion." The Debtors cannot argue in good faith that the inclusion of these debts in their schedules were not assertions; therefore, at the time the Debtors filed the objections, the only evidence provided by the Debtors were their sworn statements that the debts were owed. The Debtors each filed and attested to the accuracy of their schedules. The creditors have filed proofs of claim that are substantially similar to the assertions set forth by the Debtors in their original schedules. The Cluffs have now contradicted these prior admissions by filing amended schedules, after the admission was pointed out by the creditors, adopting the amounts in the creditors' proofs of claim and listing each claim as disputed. This last minute change of heart appears disingenuous and smacks of manipulation. The Cluffs' amendment may contradict the prior admissions but they have still failed to come forward with any probative evidence that the claims are actually disputed or not owed. Medina has not amended his schedules and he has not overcome the *prima facie* validity of the claims because he has failed to contradict the admissions made in the schedules. As a result, both Medina and the Cluffs have failed to negate the *prima facie* validity of the claims because they have admitted that the debts are owed.

The Debtors have failed to come forward with any evidence to rebut the evidentiary presumption the proofs of claim enjoy because they have been filed in accordance with § 501 and Bankruptcy Rule 3001. As a result, the Debtors have not presented sufficient evidence to rebut either the claims' *prima facie* validity or the evidence attached to the proofs of claim.

### 2. Claims that are Not Entitled to a Presumption of Validity

■ Claims 5,[61] 12 and 20 in the Cluff case and claim 11 and 12 in Medina, are not entitled to a presumption of validity because they have not complied with the requirements of Bankruptcy Rule 3001(c). Specifically, these proofs of claim fail to itemize any interest or late fees and do not list the annual percentage rate applied to the debt. However, the Debtors' objections cannot be sustained because they are insufficient to overcome the allegations on the proofs of claim. Proofs of claim are more than mere pleadings or allegations—they are some evidence. To overcome a proof of claim the Debtors must come forward with "some evidence" to "meet, overcome, or at least equalize" the statements on the proof of claim.[62] A debtor's formal objection alone is not sufficient.

### 3. Proofs of Claim Where There Is No Evidence that the Claim is Based on a Writing

■ The objection to proof of claim 23 in Cluff and claims 2 and 10 and in Medina are overruled. These claims are distinguishable from the other claims because the Debtors have presented no evidence that these claims are based on a writing and it is impossible for the Court to guess what type of obligations are memorialized

---

**61.** The Court has found that proof of claim 18 in Cluff is entitled to *prima facie* validity but that proof of claim 5 is not. Although the claims are for different accounts and are not duplicates, both claims were filed by Discover Card Financial Services. Both indicate that the basis of the debt was "Other" and attached to both is an itemized statement. Claim 5 in not *prima facie* valid because, unlike claim 18, the itemized statement did not include a summarized itemization of finance charges.

**62.** *In re All–American Auxiliary, Assoc.*, 95 B.R. at 545.

in these proofs of claim. As a result, this Court cannot determine whether the proofs of claim must comply with Bankruptcy Rule 3001(c)'s documentation requirements.[63]

Proof of claim 23 in the Cluff case is more problematic. It refers to "goods sold" through the merchant Bernina on account number 9111 in the amount of $5,875.90, and has been assigned to eCast Settlement Corporation. eCast Settlement Corporation was not listed as an unsecured creditor on the Cluffs' original schedules. But the creditor Retail Services secured by a sewing machine with an account number 9111 and a claim of $5,807.00 is listed on the schedules. Other than the Cluffs' allegations in their objection, there is no evidence before this Court that this debt is based on a writing. As a result, the only evidence before the Court is eCast's proof of claim which alleges that the Cluffs owe $5,875.90 to the claimant. The Cluffs' mere formal objection, without more, is insufficient for this Court to disallow the claim.

## D. GOOD FAITH AND JUDICIAL ESTOPPEL

Some of the parties assert that it is disingenuous for the Debtors, who originally listed these debts as undisputed, liquidated and non-contingent on their statements and schedules, to challenge the claims not on the grounds that the Debtors do not owe the creditors money, but because the creditor has allegedly failed to attach sufficient written documentation. The parties argue that such a technical procedural objection is "inconsistent with the spirit and statutory requirements of Chapter 13 that necessitate debtors to make good faith efforts to repay creditors."[64]

■ The Court agrees that on its face it seems disingenuous for litigants to take one position in the initial stages of litigation only to take the opposite position when it serves their purposes at a later time.[65] Many courts have invoked the doctrine of judicial estoppel to eviscerate this type of conduct which "bars a party from adopting inconsistent positions in the same or related litigation."[66] This Court, however, is bound by the precedential authority of the Tenth Circuit which has declined to recognize the doctrine of judicial estoppel.[67] The Chapter 13 Trustee argues that the listing of the debts in Schedule F, without objection, constitutes a judicial ad-

---

**63.** Claim number 10 filed by Met Life Auto for "auto damages," and claim number 17 filed by IHC/ARC for medical services performed by medical providers, could be based on writings, or they could be for tort claims or medical charges based on an oral contract. The Cluffs presented no evidence that the claims were based on a writing. As a result, the Cluffs' counsel withdrew the objection to claim number 10 and 17, as well as 13 at oral argument.

**64.** At oral argument, the Chapter 13 Trustee stated that these concerns do not specifically implicate these Debtors, but instead go to the nationwide attempt to disallow validly filed claims.

**65.** The Ninth Circuit BAP agreed when it stated that it is "difficult to regard as merito-

rious the objection's assertions questioning the $3,204.91 total in the proofs of claim in light of the debtors' admissions on their schedules that the debt on the three accounts was $3,765.33 and not in dispute." *In re Burnett*, 306 B.R. 313, 317 n. 8 (9th Cir. BAP 2004).

**66.** *Golfland Entertainment Centers, Inc. v. Peak Investment, Inc. (In re BCD Corp.)*, 119 F.3d 852, 858 (10th Cir.1997) (internal citations and quotations omitted).

**67.** *Id.* See also *United States v. 49.01 Acres of Land, More or Less, Situate in Osage County, State of Oklahoma*, 802 F.2d 387 (10th Cir. 1986); *Dennison v. Hammond (In re Hammond)*, 236 B.R. 751 (Bankr.D.Utah 1998); *King v. King (In re King)*, 233 B.R. 176 (Table) (10th Cir. BAP 1999).

mission that a debtor owes a debt to a creditor and that a debtor cannot in good faith rebut this admission by arguing that the creditor has failed to provide sufficient documentation to support its claim.[68] However, the judicial admission cases relied on cautions courts to draw a careful distinction between "taking judicial notice of the existence of documents in the Court file as opposed to the truth of the facts asserted in those documents."[69] The Debtors' acknowledgment of the debts in the original schedules coupled with the Debtors' failure to come forward with some evidence which would challenge the proofs of claim leads this Court to question their good faith intentions. This is true even with the Cluffs' post-objection amendment. Why is it that these claims became disputed only after the creditor's response was filed? What new evidence did the Cluffs receive that convinced them to dispute the claim? The Cluffs have not answered these questions. The court in *Narragansett Clothing Co.* overruled a trustee's objection to a proof of claim stating, "[t]he Trustee does not, and cannot in good faith contest the validity of the [claim] in question .... Although we waited patiently, no evidence whatsoever in support of his position was forthcoming."[70]

This Court has also waited patiently for the Debtors to produce some evidence to support their request for disallowance—none has been forthcoming. Even though the Court recognizes that many debtor's counsel in this district seek guidance as to their obligations in objecting to claims, amending schedules to create a dispute to obtain a ruling is not appropriate. It causes the Court to question the Debtors' motive in filing these unsupported objections, and the Cluffs' intent in amending their statements and schedules to claim that each unsecured proof of claim is disputed only after the creditor responded. Have the Debtors attempted to disallow claims they truly question or do not owe so that they, in good faith, can pay creditors with allowed claims more under their confirmed plans, or are they just trying to reduce their obligations under their plans and seek earlier discharge? Only further proceedings will tell. The issue is also raised as to whether debtors will now simply list all debts as disputed. The Court is confident that debtors' counsel will continue to require the most truthful responses from debtors in their schedules that are signed under penalty of perjury, and will continue to represent their clients without

---

**68.** Trust. Resp. to Dr.'s Obj. at 13. The trustee relies on the following quotation:

> Moreover, the Court points out that, as part of his bankruptcy petition, the Debtor listed the Morgans as unsecured creditors of his estate by virtue of a "fixed and liquidated" claim. This entry in the Debtor's schedules, standing alone, constitutes a judicial admission that he does in fact owe a debt to the Morgans. *See In re Standfield,* 152 B.R. 528, 531 (Bankr.N.D.Ill.1993) (verified schedules and statements may give rise to evidentiary admissions) (citations omitted); *see also In re Gervich,* 570 F.2d 247, 253 (8th Cir.1978) (schedules may create judicial admission of debt's existence); *In re Leonard,* 151 B.R. 639, 643 (Bankr. N.D.N.Y.1992) (finding that debtor's sched-

ule entry created admission of debt). Thus, by failing to qualify the schedule's description so as to include the term "disputed," the Debtor has waived the right to contest the debt's existence. *See In re McMonagle,* 30 B.R. 899, 903 (Bankr.D.S.D.1983) (holding that a debtor may avoid his schedules creating an admission of debt by including the term "disputed" in the debt's description).

*In re Musgrove* 187 B.R. 808, 812–13 (Bankr. N.D.Ga.1995).

**69.** *In re Snider Farms, Inc.,* 83 B.R. 977, 986 (Bankr.N.D.Ind.1988).

**70.** *In re Narragansett Clothing Co.,* 143 B.R. 582, 583 n. 1 (Bankr.D.R.I.1992).

running afoul of the strictures of Bankruptcy Rule 9011.

▮▮▮▮▮▮ As a final note, it is important to distinguish these Chapter 13 cases from Chapter 7 or 11 cases in which a trustee reviews a proof of claim asserting that the debtor owes a debt, but the claim does not attach documents supporting the claim. Unless claims are already listed as disputed, unliquidated, or contingent on a debtor's statements and schedules, a Chapter 7 or 11 trustee must examine a debtor's books and records to determine which claims are truly owed and which claims are objectionable. The Chapter 7 or 11 trustee is not privy to the personal history of the debtor and does not have first-hand knowledge of the debtor's debts. A mere formal objection from a Chapter 7 or 11 trustee does not raise the same issues of bad faith which may arise when a debtor, who has personal knowledge of a debt and who has admitted to that debt, later objects to the undisputed claim based on a technicality.

## III. CONCLUSION

The Debtors' objections to these unsecured claims are overruled because many of the claims are entitled to *prima facie* validity and the Debtors have not rebutted that presumption with sufficient evidence. The Debtors' objections to proofs of claim not entitled to *prima facie* validity are overruled because the Debtors have not come forward with *any* evidence that is of equal force to that contained in the claim to rebut the allegations made in the proofs of claim.

In this decision, the Court has attempted to strike a balance as well as to provide both debtors and creditors clear standards to interpret and apply, but, as the length of this opinion demonstrates, a bright line test that covers the multiplicity of variations in claims is not possible. Employing these standards should provide debtors and creditors with a clear and helpful pathway to proceed through the thicket of claims disallowance. A separate order will follow.